Our third case is Chrisman v. Dudek, Appeal No. 24-1898. Mr. Duncan, whenever you're ready. May it please the court, Dana Duncan on behalf of Darlene Chrisman, who is representing her granddaughter, N.R.C. We're presenting one issue today, which is whether significant evidence was adequately met, that burden of proof, by the ALJ and whether there's evidence ignored or not properly or fully evaluated that contradicts the ALJ's decision. In Gadatus, this court, just four years ago, the last line of the decision notes, this is not a case where an ALJ ignored evidence contrary to conclusions. Well, the opposite is the case in this particular matter. The ALJ outlined, for example, in his decision, Chrisman's testimony at hearing. It's on the appendix, page 8, paragraph 1. But failed to note all of her testimony about use of a diaper, defecating in the house, urinating in the house, having defiant behavior. None of that is in the decision itself. The only point that the judge even acknowledges any of this, in these problems, are on what is appendix, page 12, the first paragraph. She had regressed from being fully potty trained. No explanation. How old was the child at this time? I believe 5, if not 6. May have been over this course of time, the child was going 5 to 6. Time of the hearing. I believe, I think 6. I think she'd passed from 5 to 6. Your Honor, that's part of the problem with this case. The standard of review under the Social Security rulings is conduct or behavior typical to other children of similar age. That's one of the main considerations. I mean, how many times have you seen a child in preschool have these problems and not have anything in here? This is not a situation. I thought that the ALJ did consider the incaprices and the, you know, her defiance, how defiant she was, but then noted that the skills coach was saying she was improving. She was improving because of the medication and because of the skills coach. So why wouldn't that be enough? Because even the judge or the ALJ acknowledged that she was regressing. So it was never completely resolved. Even the improvement was not enough. She was still doing it and still behaving in that way. So then are you asking us to weigh? Are you saying she did, but just not enough, which would seem to be not our role then? No, it's not a re-weighing. It's whether or not the judge actually considered this additional evidence. And a brief statement that she seemed to be improving is not enough for this court to trace the path of reasoning because there's a ton of evidence that was not considered. Not to mention the fact, which is the second part, is how many preschoolers have to have an aide stand with them throughout the day in order to make sure she does use the bathroom and does her schoolwork and is not disruptive in the class. And that never was mentioned except that on page 12 of the appendix, the claimant is showing improvement with a skills coach. What improvement? What in this record shows that or what in the decision evidence is that there's improvement in her overall behavior? It's just to me it's problematic that the ALJ has basically cherry-picked evidence and failed to consider significant evidence. That being both the skills coach and the fact that this child could not or was not operating within normal confines because of the urination and defecation problem. So I guess the point is there's a balancing test that has to be weighed whenever you're doing these cases as to whether there's sufficient evidence to show that the ALJ properly considered everything. Now one of the things that was clear was the ALJ relied on the state agency assessment except that when you read the state agency assessments, they never considered any of this. There's nothing in their notes, in their evaluations on the disability determination explanation that says that they considered her problems with urination and defecation or that they considered her needing to have a skills coach. As a result, there's an evidentiary gap. And when the evidentiary gap is so large as in this particular case, that no longer becomes re-weighing but becomes instead a matter of whether or not there's enough evidence to show that the judge properly evaluated and considered all evidence. If there are no further questions, I'll reserve for a moment. Thank you, Mr. Duncan. Okay, Ms. Schwartz, we'll hear from you. Good morning, Your Honors. My name is Allison Talbert Schwartz, and I represent the Acting Commissioner of Social Security. I'm going to start with the three main inaccuracies that Appellant has mentioned up here in his argument. The first one is that the child was six years old during the period under consideration. That is inaccurate. She was, during the beginning of the period under consideration, she was three. During the bulk of the period under consideration, she was four, and she turned five just shortly before the administrative law judge hearing. So the comparison point is to other children who are at that age. The second inaccuracy I'd like to point out is Appellant's argument that the claimant, although recognizing that she had some limitations, was not with a skills coach all day at school. That is inaccurate. The record states that the skills coach met with the claimant three times a week for about an hour and a half and came to the house once a week for about an hour and met with the grandmother. The third thing that I want to point out is the inaccuracy of what the appellant said with regard to the state agency psychologist. The state agency psychologist, both of whom reviewed the record and found the same limitations that the ALJ did, indeed considered the potty training limitations. It's stated right there in their report, right under their finding, that claimant had less than marked limitations in the area of caring for herself. With regard to the skills coach, when you look at the evidence that the state agency consultants considered, all of the treatment records from the Bowen Health Center, where the skills coach was dispatched from, are among the records that the state agency psychologist considered in coming up with the same limitations that the ALJ did. Now, claimant has the burden of proving that she has marked limitations in two domains. And here, she did not meet that burden. The ALJ had a medical opinion that she relied upon that supported her conclusion, in addition to all the evidence that she considered. What claimant is doing is using a lay interpretation of the domains and arguing that potty training difficulties, coupled with work with the skills coach, automatically rises to the level of marked limitations. And there is no case law, there's no medical opinion in the record, suggesting that that is the case. I'd also like to point out that a plain reading of the ALJ's decision shows that she did, in fact, adequately consider the evidence. Turning first to the encopheresis, the ALJ considered Ms. Chrisman's testimony, that's the claimant's grandmother, that she had problems defecating appropriately. Did she cite every piece of testimony that Ms. Chrisman stated at the hearing? No, the ALJ is not required to do that. A plain reading of the summary, which is acceptable under Warnell and Gadadis, calls for summaries of this sort. In addition, the ALJ considered the fact that the encopheresis stemmed from claimant's trauma. In fact, the ALJ noted claimant's reports to her therapist that she had a monster who had told her to poop. The ALJ considered claimant's treatment with her primary care physician. The ALJ also considered claimant's treatment with the skills coach, showing that at school, claimant eventually learned to use the restroom on her own and did so when asked without any hesitation. And most importantly, the ALJ considered claimant's work with a GI nurse practitioner as well as a GI physical therapist. And at the end of the treatment record, those notes show that while claimant still continued to have some accidents, as a typical 4- and 5-year-old, she was improving with treatment. And the ALJ indeed found that there was a limitation here, but compared to other 4-year-olds, the ALJ reasonably concluded that it did not rise to the level of marked. With regard to the skills coach, appellant notes that the ALJ did not recognize any improvement with the skills coach, but that is also inaccurate. In the ALJ's decision on page 34, there's ample evidence showing note after note after note of claimant's work with the skills coach in school, showing that while she was defiant and didn't need to be redirected at times, she did improve and she paid attention and she completed puzzles and she did what was asked. And again, in this area, there were some limitations, but the ALJ, reasonably relying on the state agency psychologist, as well as the medical record itself, reasonably concluded that claimant's limitations did not rise to the marked level. If this court has no other questions, I would recommend that the court affirm the ALJ's decision because substantial evidence supported it. Thank you, Ms. Schwartz. Thank you. Mr. Duncan. Thank you. Government misstates the law, which is I'm not here to prove that she has two marked limitations. I'm here to establish that there's evidence that was not properly and fully considered and evaluated by the ALJ. It's not this court's responsibility to make that determination of whether there's a marked limitation. I'm asking that the matter be sent back for full evaluation. Is there any medical opinion to the effect that the criteria are satisfied here? No, there's only two. The state agency opinion was early in the process and there was no other opinion. There was one opinion that was done by a consultative examiner that only dealt with her cognitive limitations, never addressed the remaining medical issues. And as far as what the skills aid said, I mean, this decision was written in June of 22 with the hearing date being I'm not finding it off hand. March of 2021. March was the application. Yeah. April of 2022. July of 2021. The record shows on page 529 and 530 that she was still having accidents in her pants and was going poop even then rubbing it on grandma's bed. On July 19th, she used the term monster again and ended up having an accident. On September 21st, she needed direction within the classroom to stay in her chair and to continue. Page 473. On September 24th, she had to be redirected because of behavior within the situation. She was again having incontinence issues. And then on November 17th, she would close her eyes and move around. And the teacher noted that she was not listening, not interacting, and needed to have additional intervention. Not to mention the fact that the grandmother's testimony was that she couldn't even take her to the daycare or the preschool when she had a broken leg because it was required that she be there almost continuously to help supervise the child. So it's a matter of whether or not there's sufficient evidence or the evidence has been properly evaluated. And I would urge the court to make that finding that there is significant evidence that was not properly fully evaluated. Okay. Thank you, Mr. Duncan. The case will be taken under advisement.